UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA                                    CRIMINAL ACTION

VERSUS                                                      NO. 15-306

DAVID SHEAROD                                               SECTION "A" (4)

**ORDER AND REASONS**

Before the Court is a **Motion for Compassionate Release (Rec. Doc. 64)** pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) filed by Defendant David Shearod. The Government opposes the motion. (Rec. Doc. 68). For the following reasons, the motion is denied.

I. **BACKGROUND**

On April 3, 2017, Shearod pleaded guilty to Counts One, Two, and Four of the Superseding Bill of Information, charging him with bank robbery in violation of 18 U.S.C. § 2113(a); to Count Three, charging him with attempted robbery of a U.S. Post Office in violation of 18 U.S.C. § 2112; and to Counts Five, Six, and Seven, charging him with Hobbs Act robbery in violation of 18 U.S.C. § 1951. (Rec. Doc. 44 at p. 1, Plea Agreement). The Court sentenced Shearod on July 12, 2017, to a total term of imprisonment of 120 months. (Rec. Doc. 54 at p. 2, Judgment). Shearod is currently housed at FCI Beaumont Low with a projected release date of July 31, 2024.[1] (Rec. Doc. 68 at p. 4, Government Opposition).

Shearod requests compassionate release pursuant to the First Step Act based on conditions surrounding the COVID-19 pandemic. (Rec. Doc. 64 at p. 1). Specifically, Shearod argues that, in his facility, it is impossible to engage in tasks recommended by the Centers for Disease Control and Prevention (CDC) for reducing the risk of contracting COVID-19 such

---

[1] https://www.bop.gov/inmateloc/.

as washing hands and remaining six feet apart. (*Id.*). Shearod further asserts that his underlying, preexisting medical conditions of hypertension, an enlarged prostate, high cholesterol, and type 2 diabetes exacerbate his susceptibility to COVID-19. (*Id;* Rec. Doc. 64-1 at p. 2). He argues that his inability to follow CDC guidelines, together with his medical conditions, justify his immediate release. (Rec. Doc. 64 at p. 1).

The Government opposes Shearod's motion on the merits. It concedes that Shearod has satisfied the administrative exhaustion requirement but argues that he has not established an extraordinary and compelling reason justifying his release or reduction in sentence and that he continues to be a danger to the community. (Rec. Doc. 68 at p. 1).

The Court considers Shearod's motion below.

## II. DISCUSSION

Generally, "court[s] may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). This rule has some exceptions, which, under the First Step Act, may now be presented to the court upon a defendant's motion for compassionate relief. For such a motion to be properly before the court, the defendant must either "exhaust[] all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf," or 30 days must elapse "from the receipt of such a [compassionate release] request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). The court "may" grant such a motion if, "after considering the factors set forth in [18 U.S.C. § 3553(a)] to the extent that they are applicable," it finds that "extraordinary and compelling reasons warrant such a reduction." *Id.* The court must also conclude, however, that "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." *Id.*

### A. Exhaustion of Administrative Remedies

As mentioned above, section 3582 allows a court to consider a defendant's motion for compassionate release only if defendants show that they "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf," or 30 days have passed from the date the warden receives the defendant's compassionate release request, whichever is earlier. 18 U.S.C. § 3582(c)(1)(A); *see United States v. Franco*, 973 F.3d 465, 467 (5th Cir. 2020) (holding that the statutory requirement is "not jurisdictional but . . . *is* mandatory"). Here, the Government concedes that Shearod has satisfied the administrative exhaustion requirement. (Rec. Doc. 68 at p. 5). Accordingly, the Court proceeds to the merits of Shearod's motion.

### B.  Section 3553(a) Factors

Although Shearod has met the exhaustion requirement, he has not shown that he meets the remaining requirements. Upon a prisoner's motion, a district court may modify a defendant's term of imprisonment, after considering the applicable 18 U.S.C. § 3553(a) factors, if the court finds that "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i). The applicable § 3553(a) factors here are: (1) "the nature and circumstances of the offense and the history and characteristics of the defendant," and (2) "the need for the sentence imposed— (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; [and] (C) to protect the public from further crimes of the defendant . . . ." 18 U.S.C. § 3553(a)(1), (a)(2)(A)–(C).

Applying the factors to this case, the Court finds that compassionate release is inappropriate. As reflected in his presentence report, Shearod has a significant criminal history. In 2000 and 2002 he was convicted of drug possession in Orleans Parish. (Rec Doc. 49 at p. 17). More importantly, however, Shearod's string of robberies in the instant case took place two years after serving an eight-year sentence for robbing two Florida banks in 2007.

(*Id.* at p. 18). Further, Shearod's presentence report in this case includes additional counts of robbery pending against him that were dismissed. (*Id.*). The length of Shearod's sentence is therefore justified as a means of reflecting the seriousness of the offenses, deterring future similar conduct, and protecting the public from further crimes of the defendant.

While in jail, Shearod has been cited twice for disciplinary infractions—once in 2018 for refusing to obey an order and once in 2021 for possession of a hazardous tool. (Rec. Doc. 68-6). In the 2018 incident, he was found guilty of the violation and was sanctioned. (*Id.*). Defendant's persistent disregard for the law, together with his recorded infractions during his incarceration, weigh heavily against compassionate release.

### C. Extraordinary and Compelling Reasons

Finally, Shearod has failed to demonstrate that there are extraordinary and compelling reasons warranting his release. Section 3582 does not define "extraordinary and compelling reasons." Instead, Congress delegated to the Sentencing Commission the responsibility of promulgating policy statements that "describe what should be considered extraordinary or compelling reasons for sentence modification." 28 U.S.C. § 994(t). The Commission's current policy statement and corresponding commentary sets forth four categories of "extraordinary and compelling reasons" that warrant a sentence reduction: (1) medical conditions, (2) age, (3) family circumstances, and (4) other reasons. U.S.S.G. § 1B1.13 cmt. n.1(A)–(D). The Fifth Circuit recently clarified that "neither the policy statement nor the commentary to it binds a district court addressing a prisoner's own motion under § 3582." *United States v. Shkambi*, 993 F.3d 388, 393 (5th Cir. 2021). Instead, courts are "bound only by § 3582(c)(1)(A)(i) and, as always, the sentencing factors in § 3553(a)." *Id.*

Generally, the defendant has the burden to show circumstances meeting the test for compassionate release. *United States v. Clark*, 451 F. Supp. 3d 651, 656 (M.D. La. 2020) (Dick, J.); *United States v. Rodriguez*, No. 15-CR-198, 2020 WL 5369400 at *2 (E.D. La. Sept.

8, 2020) (Feldman, J.). Shearod argues that the extraordinary and compelling circumstances justifying his release include his medical conditions of hypertension, an enlarged prostate, high cholesterol, and diabetes—all of which allegedly make him more susceptible to COVID-19—and his inability to follow CDC guidelines regarding COVID-19. (Rec. Doc. 64 at p. 1; Rec Doc. 64-1 at p. 2).

### *1. Shearod's Medical Conditions*

The only medical records before the Court have been provided by the Government. (Rec. Docs. 68-4 & 68-5). Shearod's medical records confirm that he suffers from hypertension (high blood pressure), hyperlipidemia (high cholesterol), and type 2 diabetes mellitus, but not an enlarged prostate. (*Id.*). Nevertheless, taking Shearod's allegations as true, he has still failed to establish that he suffers from extraordinary and compelling medical conditions warranting compassionate release.

High cholesterol and an enlarged prostate are not included on the CDC's list of medical conditions that increase a person's likelihood of severe illness from COVID-19.[2] Further, the Fifth Circuit has noted that high cholesterol is "commonplace" and, therefore, not "extraordinary." *United States v. Thompson*, 984 F.3d 431, 434 (5th Cir. 2021).

As to Shearod's diagnosis of hypertension, the CDC lists "hypertension" as an underlying medical condition that *may* lead to an increased risk of severe illness if one were to contract COVID-19.[3] However, Shearod's hypertension is not a medical condition that makes his case "extraordinary." In fact, the Fifth Circuit recently affirmed a district court's denial of compassionate release for a 43-year-old inmate who suffered from hypertension,

---

[2] https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited February 23, 2022). The CDC states that people with "serious heart conditions" are high-risk for COVID-19 complications, but, according to the CDC, high cholesterol does not equate to a serious heart condition.

[3] https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited February 25, 2022).

high cholesterol, and who had suffered a stroke ten years prior. *United States v. Thompson*, 984 F.3d 431, 434 (5th Cir. 2021). In its reasoning, the Court noted that "nearly half of the adult population in the United States suffers from hypertension," rendering the inmate's condition far from "extraordinary." *Id.* at 434. Shearod, though six years older than that inmate, also has hypertension and high cholesterol, but has not suffered from a stroke. Even with diabetes and an enlarged prostate, Shearod's condition is only as compelling as the inmate in *Thompson*, which was still insufficient.

District courts within the Fifth Circuit have found similarly with regard to hypertension. *See United States v. Takewell*, No. 14-36, 2020 WL 4043060, at *5 (W.D. La. July 17, 2020) (denying compassionate release for a defendant suffering from hypertension and obesity); *United States v. Alexander*, No. 14-126, 2020 WL 2468773, at *5 (M.D. La. May 13, 2020) (denying compassionate release because, among other reasons, hypertension was not by itself sufficiently extraordinary); *United States v. Guyton*, No. 11-CR-271, 2020 WL 2128579 (E.D. La. May 5, 2020) (Milazzo, J.) (defendant's hypertension did not put him at increased risk for COVID-19); *United States v. Roberts*, No. 15-135, 2020 WL 2130999, at *3 (W.D. La. May 5, 2020) (stating that the defendant's "proffered reason of hypertension fails to meet the standard for compassionate release").

According to the CDC, diabetes mellitus type 1 and type 2 can lead to an increased risk of severe illness if one were to contract COVID-19.[4] "[N]onetheless, such commonplace maladies (hypertension and diabetes) do not make [Defendant's] case 'extraordinary.'" *United States v. Mondragon,* No. 4:18-CR-132 (5), 2021 WL 951797, at *4 (E.D. Tex. Mar. 12, 2021) ("According to the CDC, 42.5% of the adult population in the United States is obese, 73.6%

---

[4] https://www.cdc.gov/coronavirus/2019-ncov/hcp/clinical-care/underlyingconditions.html (last visited February 23, 2022).

is overweight, and nearly half has hypertension. In addition, the CDC reports that 34.2 million people in the United States, approximately 10.5% of the population, have diabetes.").

Even if the Court were to set aside the case law and statistics, Shearod has failed to show that medicinally controlled hypertension and diabetes are likely to cause severe illness from COVID-19. Shearod is taking medication for his hypertension, high cholesterol, and diabetes. His medical records reveal that his conditions are well controlled and that he is receiving adequate treatment.

The Court further notes that Shearod has already contracted and recovered from COVID-19, despite his preexisting conditions. (Rec. Doc. 68-5 at p. 160). The record lacks any evidence that Shearod experienced severe illness during this period or any adverse consequences due to his underlying medical conditions. (*Id.*). Also, as of March 2021, Shearod has been fully vaccinated against COVID-19. (Rec. Doc. 68-5 at pp. 133, 157–58). Collectively, these circumstances undermine Shearod's argument.

In sum, Shearod has not demonstrated that his medical conditions are "extraordinary and compelling" because he has not shown that he has a particularized risk from COVID-19.

### 2. COVID-19 Precautions at FCI Beaumont Low

Shearod also argues that FCI Beaumont Low's COVID-19 protocols are inadequate. Specifically, he claims that it is "incredibly impossible" to socially distance, adequately wash hands, or sanitize his area on a regular basis. (Rec. Doc. 64 at p. 1; Rec. Doc. 64-1 at p. 3).

Shearod's concerns regarding COVID-19 do not warrant compassionate release. First, the existence of COVID-19 at FCI Beaumont Low alone cannot independently justify compassionate release. *See United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020). Second, the record does not support Shearod's claims that BOP is not undertaking measures to curb the spread of COVID-19 and to limit inmates' risk of contracting it. Shearod's own medical records indicate that after receiving a positive COVID-19 test result, Shearod was quarantined

and his symptoms were monitored. (Rec. Doc. 68-5 at p. 22). After ten days, Shearod was released from isolation because he met the CDC criteria for release. (*Id.*). Moreover, the BOP's published statistics indicate that, currently at FCI Beaumont Low, only three inmates (out of 1,540) and six staff members have tested positive for COVID-19.[5] And, as mentioned above, Shearod has been fully vaccinated against COVID-19. (*Id.* at pp. 133, 157–58). Together these factors do not justify finding extraordinary and compelling circumstances.

For the foregoing reasons, Shearod has failed to show that there are extraordinary and compelling reasons meriting his release, and even if such reasons existed, the Court concludes that compassionate release is not warranted after considering the applicable § 3553(a) sentencing factors.

Accordingly;

**IT IS ORDERED** that the **Motion for Compassionate Release (Rec. Doc. 64)** pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) filed by Defendant David Shearod is **DENIED**.

March 4, 2022

_____
JUDGE JAY C. ZAINEY
UNITED STATES DISTRICT JUDGE

---

[5] https://www.bop.gov/coronavirus/ (last visited on February 25, 2022).